Case No. 19-1748 United States of America v. Sophia Eggleston Arguments not to exceed 15 minutes per side Ms. Salinas you may proceed for the appellate Good morning your honors and may it please the court my name is Melissa Salinas and I am the supervising attorney for Ms. Eggleston from the University of Michigan Law School. I appreciate you letting the student attorneys present this case today and I would like to introduce to you Sophia Gonzalez who will present the first part of the argument and Ms. Emma Ha who will present the second part of the argument. Thank you. Thank you very much. You may proceed. Thank you your honor. Good morning your honors and may it please the court my name is Sophia Gonzalez and I would like to reserve three minutes for rebuttal. I will discuss issues relating to the safe harbor defense and my co-counsel Emma Ha will focus on restitution and censusing enhancements. Now the district court abused its discretion when it granted the government's motion in limine to exclude testimony from Ms. Eggleston's former patients. This evidence was relevant to Ms. Eggleston's safe harbor defense. Specifically it related to whether she was providing covered services as a bona fide employee and to countering the government's trials and Ms. Eggleston knowingly and willfully provided patients with unnecessary home health care services. Counsel I hate to interrupt you so early in your argument but is that a fair representation of what was decided in the motion in limine. There was a question of bringing in people who's been just demonstrating that they needed services and they got services but the reference to the exclusion it was clear that the judge said as it relates to safe harbor this testimony may be admissible. Isn't that the way the record went? Yes your honor what the court decided at the motion in limine hearing with regards to the to this evidence from former patients is that that evidence that qualified for received age received medically necessary service was outright irrelevant to safe harbor defense and therefore she could not present that evidence. But we're arguing here that that relevant as part of the safe harbor provision a defendant must show that they are both a bona fide employee within a bona fide employment relationship and providing covered items and services. And this testimony was relevant to show that Ms. Eggleston was providing covered items and services those services which can be paid for by medical care that patients actually need in order to qualify for this provision. But the problem I have with that is it tends to if every one of these people were in dire need of services and they got the services and everybody was happy because that isn't the gravamen of the of the offense at all. That doesn't make any difference whether they got whether they needed the services or whether they got the service. Your honor I would disagree. While it's not enough on its own to show that patients receive medically necessary services the fact that she's working as a legitimate bona fide employee to provide these services goes to show that she was working within the scope of the safe harbor provision. And as trial she did present other evidence relevant to the fact that she was working pursuant to a bona fide employment relationship as relevant to the factors discussed in nationwide mutual insurance company Darden and as applied by the Fifth Circuit in United States v Sanjar. For example she testified to the fact that she was supposed to be paid hourly as relevant to the manner of payment with regard to whether the work is part of the employer's regular business. She testified that she was informing seniors about their eligibility for these services from the home health care agencies and as to employers control for work hours she testified that she submitted time sheets to the home health care agencies. So this testimony what it did was it provided the necessary connection between the fact that she was a bona fide employee and providing covered items and services. And your honor even if this wasn't necessarily relevant for safe harbor for purposes of safe harbor provision it was relevant to counter the government's theory in its case in chief and that's a knowingly and woefully provided unnecessary medical services to these patients. At trial that was their theory. Their theory was that she was fraudulently providing these services of course of patients. But in to Ms. Eggleston's knowledge she was actually helping very sick patients need to get them. And this testimony would have been relevant to show that she lacked the requisite intent under the anti-tax statute and got the government's evidence on that point. And I would point to this circuit's case in decision in United States v. Danish Bar there or similar to that case here the government or the court took the government's evidence as conclusively establishing the fact that Ms. Eggleston knowingly and willfully provided these unnecessary services and found any evidence to the contrary to be irrelevant. And that was an error because the jury should have been able to consider Ms. Eggleston's evidence along with the government's in making their conclusion as to this fact. Further this ruling also invoked the concern in United States v. Equibellum which is a central district of California case. In that case there was a concern about excluding evidence relevant to safe harbor that would also go to attack the government's case in chief or show a failure the government's part to prove any of the happened here. This evidence was relevant to undermine the intent element of the anti-kickback statute and in excluding this evidence it ultimately limited what Ms. Eggleston could use to attack the government's case in chief on this on this point. And I would also point to the eastern district of Michigan's decision in United States v. Marlinga. In that case it bears a lot of similarity to this one. The present evidence related to whether he had helped criminal defendants without any receipt of camping contributions to specifically rebut the government's evidence in that case that he was helping criminal defendants in exchange for camping contributions. And similarly here that's exactly what Ms. Eggleston wanted to do with that evidence. And if your honors have no further questions I would just ask that this court reverse and remand Ms. Eggleston's for a new trial and I will allow my co-counsel to speak with regards to restitution and sentencing enhancements. Thank you. Good morning your honors and may it please the court. My name is Emma Ha and I also represent the appellant Ms. Eggleston. Given the limited time today I will first discuss issues pertaining to joint and several restitutions and time permitting I will then discuss the erroneous application of the sentencing enhancement. First it was plain error for the district court to impose joint and several restitution across multiple criminal defendants and cases. The error was clear and obvious because it misapplies section 3664h. As cited in our brief our sister courts have found this provision to allow for joint and several restitution across multiple defendants only when the defendants are charged in a case. This court in U.S. versus Harvard upheld in 2013 that district court could not apportion restitution for the aggregate harm and impose joint and several restitution upon multiple criminal defendants where the defendants are charged in multiple cases. In the same case this court noted that the 2nd, 7th, 8th and the D.C. circuits agree with this interpretation. Disallowing joint and several restitution across multiple defendants and cases also makes practical sense for future cases. A bright line rule would promote an ease of administrative stability and consistency among the district courts. This error affected Ms. Eggleston's substantial rights because Ms. Eggleston is the prototypical defendant to have apportioned liability. In U.S. versus Bogart this court in 2009 held that economic circumstances and the defendant's respective contribution to the victim's losses are relevant factors in determining whether liability should be apportioned among the defendants. And if the other defendants do not timely pay their portion of restitution Ms. Eggleston could be responsible for a higher amount than would otherwise be if restitution had been apportioned. And not having a bright line rule here could also result in a windfall to the victims. And here the victim is Medicare which means that Medicare could receive more than was taken. And with my remaining time I will discuss why the sentencing court erred in applying the leadership role enhancement. This court reviews this question de novo because Ms. Eggleston objected to the enhancement in her sentencing memo. The nature of Ms. Eggleston's relevant conduct only related to the activities of the enterprise. Here the volume of her work is not dispositive. This court in U.S. versus Turner held in 2013 that the relevant conduct in question for the leadership role enhancement is not where the defendant merely exercised control over the activities of the enterprise. The nature of Ms. Eggleston's relevant conduct does not relate to her leading or exerting control over the scheme or any other participant. Ms. Eggleston in reality was a low-level employee who did not even have access to the master spreadsheet that tracked all the recruiters activities. Ms. Eggleston merely used her discretion within the scope of her role in the case. Thank you your honors. Thank you. You may proceed. Thank you. Good morning your honors. May it please the court Amanda Jawad on behalf of the United States. Sophia Eggleston violated the anti-kickback statute because she received a payment for every patient that she recruited. She could not have established that she was a bona fide employee of the home health care agency. So that's where I'd like to begin and that's the first issue the safe harbor issue. The court did not preclude Ms. Eggleston from raising the safe harbor defense. The court was actually very careful in its ruling to note that it was not keeping her from presenting evidence related to the safe harbor. And in fact Ms. Eggleston didn't even request a jury instruction on the safe harbor at the close of evidence. At no time did she request such an instruction. That issue should be reviewed for plain error. In terms of the other evidentiary ruling that the district court made connected to the safe harbor defense, that would be the district court's ruling precluding her from calling patients solely to testify that they received necessary services. And that's not relevant to whether or not she received kickback payment and her employment relationship with the entities from which she received those payments. So I'd like to move on to the the restitution issue that was raised as well. And here she can't establish plain error because she did not, she wasn't harmed by what happened. She hasn't satisfied the third prong in effect on her substantial right. She actually was helped by the  order in this case. The appellant argues that she is somehow by virtue of this being joint and several going to be responsible for a larger amount. And that's just not what happened in the district court. The district court specifically apportioned the payments so that she was only responsible for paying restitution on the claims for which medicare paid based on patients that she recruited. And if you look at the restitution amounts for the other co-defendants, those amounts are much larger. So she's not actually paying more money because her restitution is joint and several with other co-defendants. She's paying less because if if they pay toward it could actually decrease the amount that she owes. So she can't show any prejudice or effect on her substantial rights and thus there was no plain error in the restitution. Counsel, would you go over that with me again? Yes. Because I thought I heard you say that well it's joint and several with these other people and they might pay stuff that would really redound to her amount. Wouldn't the converse be true that she conceivably could be liable for paying things that would be part of their restitution amounts? No, your honor. If the government sought to go after her? I don't see how it can't be reciprocal. That's my point. So if you look at the the judgments in the other cases for the restitution amounts, they don't list Ms. Eggleston as being in those judgments. So she they're listed in her judgment as joint and several. I see. So and she was very she's only responsible for that portion for which she contributed. Okay. If the court has no other questions related to restitution I can move on to the sentencing enhancements. And what I would really like to do is clear up first the confusion on the the standard of review here. So she actually didn't object to either of the sentencing guideline enhancements in her sentencing memo. She did mention in discussing the nature and circumstances of the offense as a 35-53 A factor. She mentioned that she didn't have a leadership role compared to the but that's not the same as objecting to the application of the sentencing enhancement. And if you look at the first page of her sentencing memo, she says she sat down with her attorney. Her attorney writes that she sat they sat down together and reviewed the sentencing enhancements and the PSR and that the enhancements are not in dispute. So that could be read as a waiver because it shows an intentional choice not to raise that issue. At the very least it should be reviewed for plain error only. And in terms of the leader and organizer enhancement, that enhancement applies in a scheme with four or more people where a defendant exerted control, recruited other participants, had decision-making authority, and participated in the planning and organizing of this. And the evidence that supports that enhancement is her role in recruiting not just patients, she wasn't just a patient recruiter, she also recruited doctors into the scheme. So excuse me, and this what you said her role in doing what? In recruiting other participants of the scheme. So she wasn't just recruiting patients and a lot of the cases talk about whether this enhancement applies in terms of patient recruiters, but she was recruiting doctors to participate as well. They needed doctors to sign off on these prescriptions for home health care. So she was recruiting them and also telling the doctors how to prescribe and what to prescribe. She told them to prescribe home health care, she told them to prescribe certain medications. She was basically bringing people in, having doctors do what she needed to do in order for her to receive kickbacks in the scheme and for the scheme to function. She also made several threats to some of the patients that were receiving home health care, and that's why the government believes the vulnerable victim enhancement applies. Those individuals who were sick and reliant on government services, some of them were threatened into receiving home health care that they didn't need, and it goes toward both her role in the scheme and their vulnerability. And there is case law saying that those two enhancements are not mutually exclusive. Does the court have any other questions for me regarding any of the issues? Thank you, we have to let you make your decision and judgment. Rebuttal? Your honors, I would like to address the issues of sentencing enhancement and particularly the standard. The government argues that it should be for plain error because Ms. Eggleston did not preserve the issue. However, in her sentencing memo, she does say that there was no evidence to apply the leadership enhancement. Also, to she sufficiently articulated her objection and the basis of that objection in her sentencing memo, which this court in United States versus Bostick in 2004 held was sufficient to preserve the issue. And so the question of whether the leadership enhancement should apply should be reviewed de novo. Also, the fact that she brought in doctors is still within the discretion of her role as a recruiter. She did recruit doctors as well as patients. However, this is different from whether she was a leader or whether she was exerting control over the direction of the scheme. And given the fact that she was such a non-critical part of this scheme, the fact that she brought in doctors isn't dispositive of her role as a leader. Counsel, let me interrupt. I can't let the remark she was a non-critical part of this scheme go unresponded to. The two formulators of the scheme testified against her and testified she was the most important person they had. She was the linchpin of this thing going forward. So to say that there's no evidence that she was just casually along the way just isn't an Your Honor, when Ms. Eggleston entered the scheme, the testimonies reflect that the scheme was already ongoing. And not only was the scheme already ongoing, there were about 20 other patient recruiters fulfilling the exact same role as Ms. Eggleston. So even without Ms. Eggleston, the scheme could have and did proceed without Ms. Eggleston's participation. And so the scheme would have materialized with or without Ms. Eggleston. And so to say that her role was the linchpin, I think, would be an inaccurate characterization of whether she was a leader in the role. And as far as restitution issues go, the government raised that she was given, unless she was not substantially harmed, her substantial rights were not harmed. But we just want to push back on that. Her substantial rights were harmed because not only is she the prototypical defendant to have a portion liability, given her economic standing and given the respective contribution to the victim's losses, there was no factual finding as to whether she actually contributed the amount that the was attributed to, contributed to. I see that my time has expired. Well, let me just pursue that point with you a minute, because clearly joint and several liability could have been imposed. The alleged error, as I understand it, was that she was lumped with people in a different case. That's a different thing from saying that the horror stories about what could happen in joint and several liability could have happened in a case in which nobody was joined but defendants in any one case, correct? While that is true, I think if several different cases were ruling on the restitution, the overlapping restitution orders could get difficult to keep and it really is a matter of policy. It is way more easier for district courts to follow a bright line rule rather than ordering overlapping restitution orders that could get too scrambled. In that way, I think the policy reasoning is really why joint and several restitution should not be allowed. Okay. Thank you all. The case will be submitted and thank you for your work at the clinic. Thank you, Your Honors. Thank you.